## COLANTONIO v. EQUITABLE LIFE ASSUR. SOC. OF THE UNITED STATES.

Common Pleas Court, Butler County.

No. 64010.   Decided April 23, 1951.

Casper & Casper, Middletown, for plaintiff.
Graydon, Head & Ritchey, Cincinnati, for defendant.

## OPINION

By CRAMER, J.

This cause, which was heard without the intervention of a jury, was submitted to the court upon the pleadings. the evidence, the arguments and memoranda of counsel.

Plaintiff is the widow of a former employee of the P. Lorillard Company at Middletown, Ohio. The deceased had been such an employee for a period of approximately forty-five years prior to his death, .which took place on the 13th day of June, 1949. The plaintiff widow as beneficiary, seeks

to recover from the defendant insurance company the sum of Two Thousand Dollars under a group life insurance policy which she claims covered the life of the deceased.

The defendant sets up three separate defenses. In the first of said defenses it is asserted that the decedent did not sign an application for additional contributory insurance provided for in the amendment to the master policy and that no individual certificate was ever prepared, issued or delivered to him, and that therefore no policy for such additional insurance on his life was in force or effect on the date of decedent's death.

Under the second defense it is claimed that the decedent was not "actively at work" on April 1, 1949 (the effective date of the amendment providing for the contributory insurance), nor thereafter, and that consequently the deceased was never eligible for or entitled to the additional insurance under the conditions of the amendment to the policy. The amendment, among other exceptions, provides that an employee who was not actively at work at the date he otherwise becomes eligible for insurance is not eligible until he returns to active work.

In the third defense the defendant alleges that it never received any contributions either from the employer nor the deceased as payment of premium on the additional contributory insurance on the life of decedent.

The decedent had been employed by the P. Lorillard Company for approximately forty-five years and worked in the capacity of a foreman. He had a non-contributory group insurance policy with the defendant which was in the sum of $2000, and held an individual certificate therefor   Upon his death said sum was paid to plaintiff as the beneficiary.

In February 1949 the decedent became ill and in March was operated upon. During this illness the employer continued to pay the deceased his regular salary.

On March 17, 1949 the President of the employer company sent a letter to all employees including the deceased announcing that arrangements had been made with the defendant to extend the then present plan of group insurance to provide additional insurance for the employees, the cost to be shared both by the employer and such employee. This plan was to go in effect on April 1, 1949 provided that 75% of the employees accepted the plan.

The evidence shows that the deceased indicated his acceptance of the plan and that he, by reason of his earnings would be entitled to an additional $2000 of insurance. The office manager of the employer testified that while the deceased never made the necessary written application for this

additional insurance, he having indicated his desire to secure the same, deductions of $1.20 each were made from his payroll checks on April 7th and May 5th, 1949.

On May 13, 1949 there was mailed to the insurance department of the employer at New York City a report for the month of April 1949 which showed those employees of the Middletown branch who became eligible and subscribed for such contributory insurance under the amendment effective April 1, 1949. In this communication it was recited that the decedent's card covering the contributory insurance was being forwarded without his signature. The reason assigned therefor was that he was in the hospital and it was impossible to request the signature, and permission was sought to arrange to secure the signature at a later date.

On May 19, 1949, apparently in response to the office manager's report of May 13th, the New York office of the employer advised the Middletown branch that it had changed his report since the deceased "is not eligible for the additional insurance until he returns to active duty." Thereafter, the Middletown branch refunded the sum of $2.40 which had previously been deducted from the deceased's payroll check by including said sum in his paycheck of June 3, 1949.

The evidence shows that the deceased, following his illness of February 1949, made several visits to the employer's plant at Middletown. The daily time record of the plant—smoking department—was offered and received in evidence. It shows that on April 4, 1949 the deceased was absent from the plant for five hours and present three hours. This time sheet records eight hours on each of the other days during this pay period for the deceased. However, no claim is made that the deceased was in the employer's plant, actively at work, on any of the days so recorded other than April 4th. At least it is not claimed by the plaintiff that the decedent was actively at work on these other days for the full eight hours. The noted absence of the decedent on April 4th of five hours was explained by the employer as follows: Shortly after the afternoon shift began at one o'clock, the time keeper of the department would come through and check off the names of the employees who were present. No further check was made by him to determine whether those employees who were marked present remained until the four o'clock closing time and all employees were given credit for the full three hours afternoon shift unless the timekeeper was advised by the foreman that a particular employee had left early.

The evidence shows that on April 4th the deceased was brought to the plant by his daughter at about twelve-thirty

P. M. It is not claimed by the plaintiff that the decedent was at the plant on the morning of April 4, 1949. One of the employer's superintendents testified that the decedent was not at work on the afternoon of April 4, 1949 but was simply visiting and there was no reason for reporting his early departure, and in addition it made no difference since the deceased was being paid his regular wages.

It seems apparent that since the deceased was being paid his regular salary even though and while ill, the time records showed him as present for eight hours each day at the plant at least during the period just referred to. Prior to the decedent's illness he had been employed in more or less a supervisory capacity, performing the duties ordinarily performed by a supervisor or foreman, and his work did not entail much if any actual physical exertion.

The evidence respecting the conduct of the deceased on the afternoon of April 4th when he was at his employer's plant was described by several of the employees. He was brought to the plant by his daughter and went through the entrance used by the employees and was attired in the clothes that he ordinarily wore at work. One of the employees who had worked under the deceased testified that on this particular afternoon Mr. Colantonio (the decedent) "just worked as he always did." In response to an inqury of this witness as to what kind of work the deceased did on that afternoon, from one until about three o'clock, he answered as follows: "Just practically the same as he always did." Then in describing what Mr. Colantonio did, this witness stated, "He just felt the tobacco and seen that it was all right." This witness also stated that the decedent was "overseeing"— "he looked after the tobacco to see if it was all right"— "to see if we was doing it right."

Another employee also testified to the effect that he saw, on this particular afternoon, the deceased looking over the machines and feeling the tobacco. This witness also testified, "he was feeling the tobacco—like he always was supposed to work."

The evidence reveals that this occasion in April, namely, April 4th, was the last time the deceased went to the plant of the employer; three days thereafter he was confined to his bed where he remained until his death.

Most of the foregoing evidence respecting the activities of the deceased on April 4th was submitted some time after the case was closed. The court permitted plaintiff to re-open, over the objection of the defendant, and at the time reserved its ruling upon the objection to plaintiff's re-opening

of the case. It is our conclusion that the objection to the introduction of this evidence after both sides had rested. should be, and is, overruled. We do not believe that it is an abuse of discretion on the part of the court to allow a re-opening under the circumstances disclosed here.

We will therefore, in determining this cause, consider the evidence which was submitted by the plaintiff after both sides had rested.

Both counsel in their memorandum agree that the principal issue involved is whether or not the deceased returned to "active work" on April 1, 1949 or any time thereafter.

We have no difficulty in finding that the evidence falls far short of establishing, by a preponderance thereof, the claim that on April 1, 1949 (the effective date of the contributory insurance amendment) the deceased was "actively at work" for the employer. To hold otherwise would mean completely ignoring the phrase "actively at work." The courts have construed, at various times, such terms as "actively employed," "active conduct of trade or business," "actively engaged in," "active service," and "in active service."

See Volume 2, Words and Phrases at pages 144-145-146-147.

It is our conclusion, therefore, that the decedent was not eligible for the contributory insurance on April 1, 1949 because he was not "actively at work" on that date.

Paragraph 1-D(1) of said amendment of April 1, 1949 provides: "Any employee who is not actively at work at the date he would otherwise become eligible for insurance hereunder shall not be eligible until he returns to active work."

Our next inquiry is then,—Has the plaintiff shown that her decedent "returned to active work" for the named employer at any time after April 1, 1949?

We have hereinbefore recited the evidence offered in support of the claim that the deceased did return to active work for his employer on April 4, 1949. Such evidence, which in our opinion was not successfully controverted, is sufficient to sustain the claim of the plaintiff that Mr. Colantonio returned to active work for his employer on April 4, 1949. The policy does not set forth a requirement that the employee must return and be at active work for any period of time—merely that he return to and engage in such work. It is no doubt true that on this date the deceased was in poor physical condition and perhaps disabled from engaging in any work but that did not deter him from returning to active duty and attempting to carry on his usual duties. The fact that he was physically incapacitated from performing substantially all the duties of his job—which the evidence shows were not

too onerous—and that he was unable to continue at active work after April 4, 1949 should not militate against the finding that he actually did return to active work.

We therefore find that on April 4, 1949 the deceased became eligible for the contributory insurance by reason of his return, on that date, to "active work" for his employer.

It should be borne in mind that the policy provides not only that the employee upon return to "active work" becomes eligible for the contributory insurance, but also paragraph 2-E thereof provides as follows: "The amount of insurance for any employee who immediately prior to the effective date of this amendment was insured under this policy and who on said effective date is not actively at work shall be equal to the amount for which he was insured under this policy immediately prior to said effective date until his return to active work **when his amount of insurance shall be equal to an amount determined in accordance with the above basis.** (Emphasis ours.)

Therefore, the amount of insurance (contributory) which came to the decedent on April 4, 1949 amounted to the sum of $2,000.

The decedent's share of the premium was deducted from his pay-check on April 7, 1949. This covered his contribution toward the premium for the month of April 1949. Again on May 5, 1949 there was deducted from decedent's pay-check the sum of $1.20, being share of the premium for the month of May 1949.

The insurance which the deceased became eligible for and received on April 4, 1949, in the sum of $2,000, was paid for—insofar as his share of the premium was concerned—by the deduction which was made from his pay-check of April 7, 1949.

The evidence shows that Mr. Colantonio never returned to active work after April 4, 1949. As a matter of fact several days thereafter he became bedfast until his death. Under the terms of the master policy the contributory insurance of any employee ceases automatically upon cessation of active work. At that time the insurance was, in our opinion. in force.

Our next inquiry, therefore, must be this: Was this policy for additional contributory insurance on the life of Mr. Colantonio in force or effect on the date of his death?

The policy, of course, was not in force on the date of decedent's death if it contained no exception to the provision that the insurance ceased upon cessation of active work by the employee. It, however, provided as follows:

"Cessation of active work by an employee shall be deemed

to constitute the termination of his employment except that under the circumstances stated below the employer may, for the purposes of the contributory insurance hereunder, by filing written notice with the Society and continuing the payment of premiums for the insurance hereunder, regard employees as still in the employment of the employer for the respective period stated:

"(a) Where the employee is retired on pension or becomes disabled by injury or disease; for the full period of such retirement of disability."

The evidence here points rather conclusively, in our opinion, to the fact that the employer regarded Mr. Colantonio as still in its employment. Therefore, he fell within the exception to the provisions ending his insurance by reason of the termination of his active employment. The attitude of the employer toward the deceased in respect to continuing him in its employment is well illustrated in the several communications between its New York office and the Middletown branch and the fact that it continued him on its payroll from the inception of his illness to the date of his death. It is apparent here that the defendant concluded that the employer so regarded the deceased. The insurer gave validity to the deceased's status, by paying to the beneficiary the non-contributory insurance on the life of Mr. Colantonio. The provisions of the policy above referred to, respecting the ending of the contributory insurance upon termination of active employment are identically the same as those in reference to the non-contributory insurance.

It is therefore our opinion that the contributory insurance which we have found the decedent received on April 4, 1949 was continued in force, even though his active employment terminated.

Was the policy continued until the death of Mr. Colantonio? It might be well argued that it was so continued in spite of the fact that on June 3, 1949 there was refunded to Mr. Colantonio the amount previously deducted from his paychecks as his share of the premiums for this insurance for the months of April and May 1949. However, if it be considered that the insurance was no longer in force after the date of the premium refund, yet the extended death benefit provisions of the policy extend this insurance, keep it in force, and make it effective to cover the death of the decedent.

This conclusion we arrive at by virtue of the following provisions of the policy, found on page four (a) thereof and designated "B" "Contributory insurance,"

"If due proof of the death of an employee shall be submitted

in writing to the Society within one year after the death of such employee whose contributory insurance hereunder shall be terminated due to termination of employment, in accordance with the provision thereof entitled 'individual terminations,' the Society will pay to the person or persons entitled thereto under the provisions of this policy the amount of the contributory insurance for which such employee's life was last insured under this policy, provided due proof shall be furnished to the Society that:

"1. Such employee's death occurred within thirty-one days following such termination of employment, or

"2. At the date of such termination of employment such employee was totally disabled by bodily injury or disease so as to be prevented from engaging in any occupation for compensation or profit, and that such total disability continued from such termination of employment to such death, and that such death occurred (a) within a period after such termination of employment not longer than the time such employee's contributory insurance hereunder had theretofore been continuously in force and in any event not longer than twelve months. * * *"

Even if we find that the contributory insurance was discontinued on May 19, 1949 as a result of the employer's action in removing Mr. Colantonio's name from the roll of those coming under the contributory insurance plan (as evidenced by its communication of May 19, 1949 to its Middletown branch), yet this insurance would still be in force on the date of the decedent's death. We make this observation in view of the provisions of the policy above recited respecting the extended death benefits, particularly paragraph two thereof. Mr. Colantonio, from and after April 5, 1949, if not before, was totally disabled by disease so as to be prevented from engaging in any occupation for compensation or profit, and such disability continued until his death, and that such death occurred within a period after such termination of employment (in this instance May 19, 1949), not longer than the time his contributory insurance had been continuously in force (since April 4, 1949).

We believe that there is little merit to the defendant's defense that it received no payment of premiums from either the employer of Mr. Colantonio for any additional contributory insurance. While it is true that the employer is not the agent of the insurer under these group insurance policies, yet where the employer deducts the premiums from the employees pay, for remission to the insurer, the relationship between the employer and the insurance company is that of

debtor and creditor. Furthermore, the policy provides that the employee shall not be deprived of his insurance because of failure on the part of any employer either to record the insurance of any employee who has qualified thereunder or to include such insurance in the reports furnished to the Society.

We likewise find no impediment to plaintiff's recovery because of the refund to the decedent during his lifetime of the April and May premiums contributed by him. First, it was not shown that Colantonio had been advised that the premiums were being refunded, and secondly, the paycheck in which the same were included was neither endorsed nor cashed by him, and the same were tendered back in court on the day of trial.

We find that the plaintiff is entitled to recover from the defendant the sum of Two Thousand Dollars with interest thereon from the 13th day of June, 1949, the date of the decedent's death.

An entry may be prepared finding in favor of the plaintiff upon the issues joined in this cause, and that she is entitled to recover the foregoing sum with interest thereon as stated, and her costs.

\* \* \* \*

Authorities consulted: 29 American Jurisprudence, Section 1370, et seq., 55 A. L. R. page 1247; Kowalski v. Aetna Life Ins. Co., 266 Mass. 255, 165 N. E. 476, 63 A. L. R. page 1034; 85 A. L. R. page 1462; Emerick v. Connecticut General Life Ins. Co., 120 Conn. 60, 179 A. 335, 105 A. L. R. page 418; Garnsky v. Metropolitan Life Ins. Co., 232 Wis. 474, 287 N. W. 731, 124 A. L. R. page 1494; Inter-Ocean Casualty Co. v. Leccony Smokeless Fuel Co., 123 W. Va. 541, 17 S. E. 2d 51, 137 A. L. R. page 493; 145 A. L. R. 951; State ex rel. Nelson v. Thompson, 241 Wis. 344, 6 N. W. 2d 206; Johnson v. Travelers Insurance Company, 239 Mo. App. 599, 194 S. W. 2d 938; Zeigler v. Equitable Life Assur. Soc., 219 Iowa 872, 259 N. W. 769; Equitable Life Assur. Soc. v. Larocco, 3 Cir., 68 F. 2d 451; **Thull, Adm'rx v. Equitable Life Assur. Soc., 40 Oh Ap 486**, 178 N. E. 850; **Garber v. Chrysler Corp., et al., 38 Abs. 405**, 50 N. E. 2d 416; **Mills v. Equitable Life Assur. Soc., 28 Abs 222**; Boseman v. Connecticut General Life Insurance Company, 301 U. S. 196, 57 S. Ct. 686, 81 L. Ed. 1036.