J. Daniel Fink, J.
This controversy calls for the construction of a policy of group life insurance. There appears to be no authority in this jurisdiction directly in point.
The plaintiff, as widow and named beneficiary, seeks to recover the sum of $2,500, representing increased insurance benefits to which she claims she is entitled by virtue of an amendment to a policy of group life insurance covering her late husband.
Under an effective date of December 28, 1953 the ■ defendant issued its master group life insurance policy to Henry Spen & Co., Inc., of Brooklyn, N. Y., engaged in the business of manufacturing trailers and truck bodies, for civilian and Navy and Air Force use. Under the terms of the policy, one Samuel Augusta, an employee of Henry Spen & Co., Inc., since March, 1946, became insured under such policy on its effective date and received a certificate evidencing his coverage. The certificate named Elizabeth Augusta, described as wife, the plaintiff herein, as beneficiary.
*113 The master policy, insofar as pertinent to the question to be decided, provided:
Insurance Clause. Subject to the terms and conditions of this policy applicable to this coverage, upon receipt of due proof at the Home Office of the Company of the death of an employee insured for Life Insurance under this policy, the Company shall pay to the beneficiary the amount of Life Insurance in force under this Policy on the life of such employee at the date of death, in accordance with the provision entitled ‘ Amounts of Insurance ’ contained herein.
* • *
Amounts of Insurance. The amounts of insurance on any employee and any change in such amounts shall be based upon the following Schedule:
SCHEDULE OF INSURANCE FOR EMPLOYEE COVERAGE Classification of Employees Glass
All Employees under age 65................................... A
All Employees age 65 and over................................ B

Coverage Amount of Insurance

Class A Class B

Life Insurance ................................. $2500.00 $1000.00
Accidental Death and Dismemberment Insurance
(Full Amount) ............................. $2500.00 $1000.00
Employee’s Individual Certificate. The Company will issue to the Employer for delivery to each insured employee an individual certificate setting forth the benefits to which such employee is entitled under this policy, the name of the beneficiary, if any, designated by the employee, and the rights to which such employee is entitled in case of termination of his employment or termination of this Policy or of any Section hereof. Such certificate shall not constitute a part of this Policy.
* * *
Modification of Policy. This Policy may be amended or discontinued at any time by written agreement between the Company and the Employer.
* * *
Employer Not Company’s Agent. The Employer shall in no event be considered the agent of the Company for any purpose under this Policy.
On June 12, 1954 Samuel Augusta was taken to the Long Island College Hospital for what proved to be his terminal illness, where he remained until he died on June 30, 1954. He was admitted to the hospital suffering from, and complaining of, shortness of breath. The hospital records, received in evidence, indicate that the direct cause of death was heart failure due to rheumatic heart disease.
In the meantime, and on or about June 25, 1954, Henry Spen & Co., Inc., and the defendant, amended the master policy. The employer’s application for this amendment, bearing date June 7, 1954, indicated that the purpose of the amendment was to change the “ Schedule of Insurance ” so as to take into account *114 the length of service of various employees, and the pertinent provision of such application reads as follows:
It is agreed that no change requested herein shall become effective until this request shall have been approved by the Company at its Home Office; and it is further agreed that, subject to such approval, if any employee to whom such requested change is to be applicable is not actively at work on the effective date, such change shall not be applicable to such employee until the date of his return to active work. (Emphasis supplied.)
The actual amendment, as approved by the Company, was dated June 25, 1954, and reads, in part, as follows:
It is understood and agreed that effective as of June 28, 1954, said Policy is hereby amended as follows:
PART I
SCHEDULE OF INSURANCE
The Schedule of Insurance for Employee Coverage contained on Page T-2 of said Policy is cancelled and annulled. The amount of insurance as to each employee remaining insured and each employee becoming insured under said Policy on and after June 28, 1954, shall be determined in accordance with the following Schedule of Insurance for Employee Coverage, except that the amount of insurance for any employee who is not actually at work on said date shall not be increased until the date he returns to active work. (Emphasis supplied.)
SCHEDULE OF INSURANCE FOR EMPLOYEE COVERAGES Glassification of Employees Class
All Employees Length of Service
Less than 8 years ............................................ A
8 years and over ............................................. B

Coverage Amount of Inswanee

Glass A Class B

Life Insurance .................................. $2500 $5000
Accidental Death and Dismemberment Insurance
(Full Amount) .............................. $2500 $5000
The amount of insurance of an employee shall be reduced to $1000 by reason of attainment of age 65.
If the classification of an employee shall change, his amounts of insurance shall change accordingly on the date of such change in classification provided the employee is then actively at work, otherwise on the date he returns to active work. (Emphasis supplied.)
To summarize the foregoing provisions, the master policy provided that all employees under age 65 were deemed to be in Class A, and such Class A employees were entitled to life insurance in the amount of $2,500. The amendment to the master policy reclassified the employees, so that those with length of service of eight years or over, who had not attained age 65 at date of death, were deemed Class B employees entitled to life insurance in the sum of $5,000, provided such Class B employees were “ actively at work ” on June 28, 1954, *115 the effective date of the amendment, or if not then actively at work, on the date of ‘‘ return to active work. ” It is conceded that on June 28,1954, the deceased had been employed for more than eight years and at date of death had not attained age 65.
As indicated, Samuel Augusta died on June 30, 1954. In due course, a death benefit of $2,500, provided in the original terms of the group policy for employees under age 65 was paid to the named beneficiary, the plaintiff herein, and no part of this amount is in question.
The present claim is made on the assertion that Mr. Augusta was entitled to a total coverage of $5,000 by virtue of such amendment to the master policy. The payment of $2,500 heretofore received by the' plaintiff was made without prejudice to her right to sue for the balance of $2,500, the amount presently in suit.
The foregoing facts are not in dispute.
At the trial, one Arthur Halpern, the office manager of Henry Spen & Co., Inc., testified in behalf of the plaintiff. By his testimony, it was developed that Mr. Augusta’s usual duties were those of traffic manager, sales manager, and contract administrator for Henry Spen & Co., Inc.
While the decedent was at the hospital, between June 12, 1954 and June 30, 1954, Mr. Halpern stated that he visited him every day with the possible exception of one or two days. During' this period, the average length of such visits was an hour to an hour and a half, and included visits on June 28, 29 and 30, 1954. Such visits were made during and after working hours, and were for the purpose of discussing current business problems that had arisen with respect to the deceased’s duties as traffic manager, sales manager and contract administrator. Mr. Halpern asked for and received answers, instructions and directions in respect of such problems, which were relayed to his employer. He went to the hospital at the specific direction of Mr. Monroe Spen, the treasurer of Henry Spen & Co., Inc.-
Throughout the entire month of June, 1954 the deceased was continued on his employer’s payroll, receiving his full salary each week up to and including the week ending July 1, 1954.
The plaintiff, in her own behalf, testified that her husband had originally entered the hospital for rest, and that later she was at his bedside daily between June 25 and June 30, 1954. It appears that he was fully conscious throughout his entire stay at the hospital. She stated that Mr. Halpern visited her husband daily between June 25 and June 30,1954, that the duration of such visits was from an hour to an hour and a half, during which time they discussed business matters. She further *116 testified that she was annoyed at this practice, but that her husband “ wanted it that way.”
Plaintiff having rested, defendant introduced hospital records to evidence the fact that the deceased could not be and was not “ actively at work” at his employer’s place of business from June 12 through June 30, 1954, inasmuch as he was confined to the hospital during such period, and that, in addition to being in the hospital on June 28, 29 and 30, his condition was marked “ critical ” on those days. It relies further on a claim form, introduced in evidence by plaintiff, prepared by Mr. Halpern and executed by Mr. Monroe Spen, wherein it was stated that June 18, 1954, was the last day on which the deceased had worked. The defendant offered no further proof and rested.
At this point, it is to be noted that as the trier of the facts, the court was favorably impressed with the testimony and the demeanor of the plaintiff, and the witness, Arthur Halpern.
The determinative issue presented is whether the deceased was “ actively at work ” on June 28, 1954, or at any time thereafter until June 30, 1954 within the meaning and terms of the application for and the policy amendment.
It is the defendant’s position that, as to the plaintiff’s husband, such amendment increasing life insurance coverage never became effective, since the deceased, having been confined to the hospital between June 12, 1954 and June 30, 1954, could not effectively report for work and was not “ actively at work ” on June 28, 1954 or thereafter at his employer’s place of business.
The plaintiff urges that such increased coverage became effective as to her late husband, because the phrase ‘1 actively at work ” did not require that such work be performed at any particular place or for any specified number of hours.
The issue thus presented was pointed up during the trial as follows:
The Court: My question, Mr. Post, (Attorney for Defendent) is: Actively at work, where?
Mr. Post: At the place of business, is our position.
The Court : Your position is that he must be actively at work and physically in the place of business of his employer?
Mr. Post: That is correct.
And further:
The Court : Is it the defendant’s contention that, if the deceased was on his annual vacation, he would not then be actively engaged in work?
* * *
Mr. Post: My understanding is that, if he had worked up to the day preceding the start of the annual vacation, and physically would be in such condition that he could return immediately to work, while on his vacation, if it *117 became necessary, that he would be considered actively at work during a paid regular vacation period.
And again:
Mr. Post : I say that he is not actively at work if he is away from his usual place of business.
The Court : I see your point. Well, then,—
Mr. Post: That is my position, I know, your Honor —
The Court : (Cont’g) —if it is the defendant’s contention that any employee is not actively at work when away from his usual place of business, then is the Court to assume that you exclude all employees on vacation at the time this amendment was to take effect?
* * *
Mr. Post: I would say that it would take effect, the increase would take effect, as to all of them,—
The Court: As to all of them?
Mr. Post: (Cont’g) — who were on vacation and were not away sick and on vacation, or something else. In other words, when I say on vacation, in case of emergency, could have climbed into their ears and come down to the shop and gone to work.
To negative plaintiff’s proof that the decedent was actively at work during snch period, the defendant places its main reliance upon the hospital records and claim form, supra. Such records, while competent and persuasive, are not conclusive, and do not satisfy the court that the decedent was incapable of working or did not actually work between June 28 and June 30, 1954. (John Hancock Mut. Life Ins. Co. v. Shoun, 28 Tenn. App. 425; Powell v. Equitable Life Assur Soc. of United States, 173 So. Car. 50.)
The fact that the decedent was ill does not negative the fact that he actually worked. (Colantonio v. Equitable Life Assur. Soc., 64 Ohio L. Abs. 490; 100 N. E. 2d 716; Shabotzky v. Equitable Life Assur. Soc., 257 App. Div. 257 [First Dept.].)
In Colantonio v. Equitable Life Assur. Soc. (supra), the assured became ill in February, 1949 and was operated on in March, 1949. The insured had life insurance coverage under a group policy and the amount of such insurance coverage was increased effective April 1, 1949.
Such increase of insurance was subject to the following condition: (64 Ohio L. Abs. 495; 100 N. E. 2d p. 719): “Any employee who is not actively at work at the date he would otherivise become eligible for insurance hereunder shall not be eligible until he returns to active work.” (Emphasis supplied.)
The assured was not actively at work on April 1, 1949 and had not done any work' for several months prior thereto by reason of illness. On April 4, 1949 the assured came to the employer’s premises at 12:30 p.m. and remained there until 3:00 p.m., during which period he did his usual supervisory *118 work. Thereafter, he never did any work and died on June 13, 1949. The court held that the insured was entitled to the increased insurance coverage, stating (64 Ohio L. Abs. 495-496 ; 100 N. E. 2d 719-720): “ The policy does not set forth a requirement that the employee must return and be at active work far any period of time — merely that he return to and engage in such work. It is no doubt true that on this date the deceased was in poor physical condition and perhaps disabled from engaging in any work but that did not deter him from returning to active duty and attempting to carry on his usual duties. The fact that he was physically incapacitated from performing substantially all the duties of his job — which the evidence shows were not too onerous — and that he was unable to continue active work after April 4, 1949 should not militate against the finding that he actually did return to active work. We therefore find that on April 4, 1949 the deceased became eligible for the contributory insurance by reason of his return, on that date, to 1 active work ’ for his employer.” (Emphasis supplied.)
While there is no doubt that an insurance company is ■ entitled to have its contract enforced by the courts as written (Drilling v. New York Life Ins. Co., 234 N. Y. 234, 241) or, absent legislative restriction, has the right to insert a condition precedent (Bronx Sav. Bank v. Weigandt, 1 N Y 2d, 545, 551) the court is without authority to limit the coverage of a policy of insurance by adding words of limitation or exclusion to the clause defining coverage (Taylor v. United States Cas. Co., 269 N. Y. 360, 363).
If the defendant desired to exclude from coverage an employee, who, for any reason, was not physically present in his employer’s place of business, during regular business hours, performing all of his regular duties, or if absent, for any reason, at any time, was nevertheless required to be subject to call, it should have so specified (Taylor v. United States Cas. Co., supra, p.. 363). If an exclusion of liability is intended which is not apparent from the language employed, it is the insurer’s responsibility to make such intention clearly known. (Morgan v. Greater New York Taxpayers Mut. Ins. Assn., 305 N. Y. 243, 248.)
It is plain that, while in a hospital, one may be actively at work, if his activity consists of giving counsel, advice, and orders, to others, on behalf of his employer. In the absence of some appropriate language compelling a different construction, this would appear to be true if the employee is engaged in work of an advisory or supervisory character, and is not a wage earner, whose duties require manual labor.
*119 Here, apparently, the employer regarded the deceased as actively at work, evidenced by the fact that it requested the office manager, Mr. Halpern, to visit the deceased at the hospital for the purpose of receiving and relaying instructions and directions with respect to current business problems, and continued to pay the deceased his full salary while he was in the hospital. Ordinarily, an employee is not entitled to compensation if absent from work because of sickness, failing an agreement to that effect. (Fischhoff v. Adels-Loeb, Inc., 192 Misc. 221.) In Shabotsky v. Equitable Life. As sur. Soc. (supra) it was held that, notwithstanding uncontradicted medical testimony that the assured was totally and permanently disabled from doing any work, a finding that he was not so disabled could be predicated upon the fact that the insured did in fact work.
With respect to the defendant’s contention that before the decedent could become eligible for the increased insurance coverage provided by the amendment effective June 28, 1954 it was necessary for him to be actively at work on that date, at his employer’s premises, or if absent, subject to call, the court finds nothing in the language of the amendment which imposes such limitation. There is a failure to state a specific or clear condition precedent requiring an employee to be actively at work at any given locale or for any specific period of time.
The guides of construction which have been enunciated by the courts, in determining the coverage of a policy of insurance, serve to sustain the plaintiff’s contention. “Insurance contracts, above all others, should be clear and explicit in their terms. They should not be couched in language as to the construction of which lawyers and courts may honestly differ.” (Janneck v. Metropolitan Life Ins. Co., 162 N. Y. 574, 577-578.) “It is well-settled that if a policy of insurance is written in such language as to be doubtful or uncertain in its meaning, all ambiguity must be resolved in favor of the policy holder and against the company ”. (Hartol Products Corp. v. Prudential Ins. Co., 290 N. Y. 44, 49.) “ We all know that a contract of insurance, drawn by the insurer, must be read through the eyes of the average man on the street or the average housewife who purchases it.” (Lachs v. Fidelity & Cas. Co. of N. Y., 306 N. Y. 357, 364.)
To sustain the construction here urged, the defendant has the burden of establishing that “ the words and expressions used not only are susceptible of that construction but that it is the only construction that can fairly be placed thereon.” (Hartol Products Corp. v. Prudential Ins. Co., supra, p. 49.) And *120 further, “ Policies of insurance, when capable with equal reason, of one or more interpretations are construed against the insurer and in favor of the insured.” (Marcus v. United States Cas. Co., 249 N. Y. 21, 24.)
Assuming that the language of the amendment in question is capable of the construction urged by the defendant, it is equally true that such language can be interpreted in the manner urged by the plaintiff, namely, that ‘ ‘ active work ’ ’ did not have to be performed at the employer’s place of business, or for any specified period of time, to enable the decedent’s widow to qualify for the increased coverage.
The most that may be said for the defendant under these circumstances, is that the clause is ambiguous, and under well-settled authority, such ambiguity must be resolved in favor of the plaintiff and against the defendant.
Under circumstances similar to the case at bar, the court, in Equitable Life Assur. Soc. v. Worthman (67 F. 2d 721) held that one working as an assistant superintendent of a fuel company, having supervisory duties, could be considered working full time and for full pay, although he was ill and remained at home where he was consulted in connection with his employer’s business.
There the assured was an assistant superintendent for a fuel company and had charge of three coal docks employing 200 to 300 men. “ His duties were supervisory, not involving physical labor, and his usual headquarters were at an office near one of the docks ” (p. 722). Under an original group policy effective June 1, 1929 the assured Worthman had been carrying $2,000 of life insurance. By a rider attached to such policy, dated June 10, 1930 and effective July 1, 1930, the amount of such insurance was increased subject to the condition (p. 722): “that employees who on its effective date were not working full time and for full pay should not be eligible for the extended insurance until their return to work at full time and for full pay.” (Emphasis supplied.)
The assured Worthman, if he met the above condition, was eligible for $6,000 of additional insurance. The insurance company in that case resisted payment of the additional insurance because (p. 722): “ The defense is that, as to Worthman, this extended insurance never took effect, in that he became ill before the effective date (July 1, 1930) of the rider for the extended insurance, and that he was not employed full time from the time this illness began until his death on September 16, 1930.”
*121 In connection with the issue of whether the assured Worth-man was working full time, it appeared that on May 22, 1930 he went to the Mayo Clinic for a hernia operation, returning to his home about June 23, 1930. He did not go to the office of his employer but remained at home where he was visited by various of the employees with some of whom he took up the matter of the employer’s business. He was thus at his home until Jnly 12, 1930 when he went to a nearby resort, where he owned a summer cottage, and remained there for about three weeks. On August 12, 1930 he went to a sanitorium where, about four weeks thereafter, he died of gastric carcinoma.
In holding that the decedent’s widow was entitled to recover the additional insurance, the court stated (pp. 723-724): “It must be considered that, under the terms of the extended insurance, if on the date it became effective, July 1, Worthman was not working full time, it would become effective at any time thereafter when he did render what would amount to full-time service, even if only for a brief period, and that, once effective, it would so remain while the premiums were paid and the employment continued.
“ The superintendent also testified that, during the period the employer constructed and put into operation a new 250,000-ton capacity coal dock at Milwaukee, and that Worthman, on account of his long experience with coal docks, was called on in advisory capacity respecting this new dock.
“ In the case of such an employee, what might reasonably be considered as full-time service depends largely upon the relations and transactions between employer and employee. It is not essential to full-time employment that such an employee be regularly and continuously at a particular place, such as the employer’s office. He might at his own home render such advisory and supervisory services as is deemed by the employer to be, and in fact was, a full-time service for the time being. This could have been by conference and consultation loith other officers of the employer, and to the employer’s entire satisfaction. In this connection, and as bearing on the quantum of the service rendered, the jury may have considered the fact that, during all the time in question, the employer saw fit to pay Worthman his full salary.” (Emphasis supplied.)
The defendant urges and relies strongly upon the case of Boyer v. Travelers Ins. Co. (7 Cal. 2d 615), as controlling upon the issue here presented. The court is of the opinion that the facts in that case are readily distinguishable.
*122 There the assured was employed as an automobile salesman, on a commission basis. He was entitled to insurance coverage under a group policy after making a written application for such insurance providing he was actually at work on the 14th day of the calendar month next following the date on which he filed application for such insurance. Mr. Boyer, the salesman, filed a written application for insurance on July 5, 1933 and continued working as a salesman for the next few days. On July 10, 1933 he went to a hospital where he died on July 14, 1933 at 9:30 p.m.
The court there found (pp. 617-618): “‘In an attempt to show that Mr. Boyer was “actually at work” on July 14, 1933, respondent introduced evidence to show that Mr. Lowe and the sales manager visited Mr. Boyer on that day and discussed certain prospective deals with him. They were there about 25 or 30 minutes. A review of this evidence shows that the discussion involved certain deals upon which Mr. Boyer had been working before he was taken to the hospital and that the said discussion related solely to the question of whether other salesmen should be permitted to carry on the work or whether said deals should be permitted to rest until Mr. Boyer was able to return to work. Upon this evidence, respondent seeks to sustain the finding under attack. We believe, however, that said evidence was wholly insufficient to show that Mr. Boyer “ was actually at work ” ’ ”.
Further, the court premised its conclusion that Mr. Boyer was not at work on July 14, 1933 because the evidence (p. 619) : “ ‘ showed that he performed none of his customary duties as a salesman on that day but merely discussed Ms inability to perform Ms duties and the advisability of permitting others to carry on until such time as he might be able to perform such duties.’ ” (Emphasis supplied.)
That is not the situation here.
The circumstances in this case indicate clearly that the assured, although confined in the hospital, was' nevertheless, at his employer’s request, rendering services, viz.: making decisions on, and giving instructions and directions with respect to current business problems that had arisen.
Upon the basis of the foregoing authorities, a reasonable construction of the language of the policy amendment, and the weight of the credible and uncontradicted testimony, constrain the conclusion that on June 28, 1954 and thereafter until date of death, the decedent was “actively at work ” within the meaning and intent of the defendant’s group life insurance policy as amended June 28,1954. It follows that Ms beneficiary *123 is entitled to the increased insurance coverage provided by such amendment.
Judgment for the plaintiff in the sum of $2,500, with interest thereon from June 30, 1954.
Thirty days’ stay.