**Mrs. James T. HARRISON, Plaintiff,**

v.

**The TRAVELERS INSURANCE COMPANY, Defendant.**

**Civ. A. No. 1353.**

United States District Court,
E. D. Texas,
Texarkana Division.

Aug. 7, 1972.

---

George Payne, Garrett & Letbetter, Houston, Tex., for plaintiff.

Howard Waldrop, Atchley, Russell, Hutchinson & Waldrop, Texarkana, Tex., for defendant.

## MEMORANDUM OPINION

JOE J. FISHER, Chief Judge.

Mrs. James T. Harrison, a resident of Texas, brings this diversity cause of action as beneficiary of a policy of group life insurance issued by the Defendant, The Travelers Insurance Company, a Connecticut corporation licensed to do business in Texas. On January 5, 1954, decedent, James T. Harrison, became an employee of Lone Star Steel Company and was covered by a group life insurance policy in the amount of $6,500.00. He also exercised the option of purchasing an additional $8,000.00 of insurance which gave the deceased a total coverage of $14,500.00. Besides seeking a recovery for the total coverage, Plaintiff seeks an award for penalty and attorney's fees.

On October 15, 1968, the United Steel Workers of America instituted a strike against Lone Star Steel, and the Decedent, a member of this union, ceased working on that day. The group policy continued to provide coverage until October 31, 1968, at which time the policy terminated. Later the insurance agreement between the Union and the Company, which was a part of the Strike Settlement Agreement, provided for reinstatement of the group policy, if the employee returned to work.

Decedent had begun suffering from what his doctors called laryngitis before the strike commenced. In April 1969, Decedent's doctor sent him to Baylor Hospital in Dallas, Texas, for the purpose of having a biopsy performed. There it was discovered that he had inoperable cancer of the throat and lungs. Almost immediately thereafter, Decedent began receiving radium therapy at the Dallas hospital.

A strike-ending agreement was reached on May 11, 1969, and the Decedent was told to report to the plant on May 15, 1969. Decedent, who was physically able to resume work on May 15, 1969, reported to the plant, was issued an employment badge, and received a copy of the general plant rules. He signed the Lone Star Steel Company's enrollment and payroll deduction authority for the purpose of purchasing the $8,000.00 optional insurance and received his vacation pay, less a deduction of $5.12 for his first monthly premium. Sometime prior to May 18th, the day he was advised by the company on May 15th, to report back to work, he requested and was granted a medical leave so that he might continue his treatments in Dallas.

Decedent never resumed his regular duties at work. Instead he was placed on medical leave until July 15, 1969, with that portion of the period May 18 to June 7, 1969, designated as the vacation which he had earned for work performed between January 1, 1968, and October 15, 1968. His medical leave was subsequently extended to October 15, 1969, and then to January 15, 1970, and finally to July 15, 1970; however, he died in the Titus County Memorial Hospital in Mt. Pleasant, Texas, of cancer of the lungs and throat on March 10, 1970.

In May 1969, a personal check in the amount of Five and 12/100 ($5.12) Dollars was received at the Lone Star Steel plant account office from Decedent; thereafter, this continued each month until March 1970, but each month this check was returned with the notation that his group life insurance was not in effect.

The question presented to this Court is whether the Decedent's activities of May 15, 1969, can reasonably be held to constitute a "return to work" within the meaning of the Strike Agreement and the terms of the policy in question. We think so and hold for Plaintiff. There is no evidence in the record to reflect that the Decedent was physically unable to resume work on May 15, 1969. To the contrary, the evidence is to the effect that Decedent returned to work on May 15, 1969, and was ready and willing to perform any duties required of him. Subsequently,

and prior to May 18th, he was excused from performing his regular duties in the open-hearth division by obtaining a medical leave; therefore, Defendant's contention that the requirement of "returning to active work" was a condition precedent under said policy is inapplicable.

Since the policy does not describe how eligibility is to be regained after a strike, all of the agreements involved must be considered, and not just the policy provisions pertaining to eligibility.

Cases cited by the parties present a fact situation covering the initial coverage rather than the reinstatement of coverage. Further, most of the cases cited involve a decedent who was physically unable to return to the employer's place of business; Elsey v. Prudential Insurance Company of America, 262 F.2d 432 (10th Cir. 1958); John Hancock Mutual Life Insurance Company v. Welsh, 267 F.2d 152 (5th Cir. 1959); Kolligian v. Prudential Ins. Company of America, 353 Mass. 322, 231 N.E.2d 381 (1967); Boyer v. Travelers Insurance Company, 7 Cal.2d 615, 61 P.2d 925 (1936). While in the instant case, the deceased returned to the Lone Star Steel Plant at a time when he was physically capable of performing his regular duties, and he did take care of certain preliminary requirements incidental to his employment. See Equitable Life Assurance Society of United States v. Wortham, 67 F.2d 721 (7th Cir. 1933); Colantonio v. Equitable Life Assurance Society of the United States, 100 N.E.2d 716 (Ohio Com.Pleas 1951); Augusta v. John Hancock Mutual Life Insurance Company, 11 Misc.2d 111, 170 N.Y.S.2d 908 (N.Y.Mun.Ct.1958).

It is undisputed that Decedent did not participate in any of his normal activities in the open-hearth division, but we do not believe this requirement to be mandatory under the facts and circumstances for the policy to be effective.

The insurance agreement between the union and steel company, which was part of the strike settlement package, provides:

## 5. REINSTATEMENT

"The insurance coverage of an employee who returns to work from leave of absence, layoff or strike during which some or all of his insurance coverage shall have terminated shall be reinstated on the day he returns to work."

The booklet "Lone Star Steel Company Group Insurance Plan Production and Maintenance Employees," which was issued to employees for the purpose of describing the insurance benefits, states:

### REINSTATEMENT

"The insurance coverage of an employee who returns * * * during which some or all of his insurance coverage shall have terminated shall be reinstated on the day that he returns to work."

Both the labor agreement and the booklet use the phrase "returns to work." Defendant argues that these words expressly negate coverage because the Decedent merely "signed up for work" on May 15th and never "returned to work" at the open-hearth department. With this interpretation we disagree.

The insurance coverage was to commence as soon as the workers gave up their strike and returned to work. The resumption of insurance protection was a material consideration for the performance of the collective bargaining contract. Since the labor agreement was for the purpose of bringing workers back to their jobs, a worker who reported for duty clearly fulfilled the intended requirement of the reinstatement provision and complied with the terms of the policy.

On May 20, 1969, nine days after the strike had ended, W. H. Johnson, Vice President and Treasurer of Lone Star, wrote Harry L. Ewell of Travelers a let-

**306**

ter to confirm an earlier telephone conversation:

"2. Coverage with respect to a 'striking' employee will become effective on the date that the employee returns to active work, except that with respect to an employee who was confined in a hospital on May 11, 1969, coverage shall become effective on May 11, 1969, provided the employee notified Lone Star's Industrial Relation Department on or before July 10, 1969, of his intent to return to work and requests to be placed on Medical Leave."

Since a hospitalized worker was to be covered on May 11, 1969, if he made his intent to return to work known and obtained a medical leave, then certainly coverage was not dependent upon the actual performance of traditional labor, but, rather, was dependent upon the manifestation of an intent to return to work. The Decedent was not required to report for work on May 18th because the company had granted him a medical leave prior to that time, and the leave extended beyond the date of his death. The deduction of the option insurance policy on May 15th rather than on the day the Decedent was to report to the open-hearth department is evidence that the company considered that the insurance coverage was immediately effective and that the Decedent had satisfied the requirement of reinstatement by returning to work.

Judgment will be entered for the Plaintiff for $14,500.00, plus reasonable attorney's fees to be agreed upon by stipulation of the parties, or, if not so agreed, to be submitted to the Court at a later time. The Plaintiff's request for 12% penalty is also granted under the authority of Lumbermens Mutual Casualty v. Klotz, 251 F.2d 499 (5th Cir. 1958) and Whittet v. Reliance Life Ins. Co., 213 S.W.2d 164 (Tex.Civ.App.—San Antonio 1948, no writ).

This Memorandum Opinion will constitute the Court's Findings of Fact and Conclusions of Law.