PHYLLIS L. ROBY *v.* CONNECTICUT GENERAL LIFE INSURANCE COMPANY

HOUSE, C. J., SHAPIRO, LOISELLE, MACDONALD and BOGDANSKI, Js.

396

Argued April 4—decision released May 28, 1974

*Bruce W. Manternach,* with whom was *Jack S. Kennedy,* for the appellant (defendant).

*John A. Spector,* for the appellee (plaintiff).

MacDonald, J. This appeal arose out of an action against the Connecticut General Life Insurance Company, hereinafter referred to as the defendant, brought to recover claimed group life insurance coverage in the face amount of $50,000 on the life of Bradley L. Newcomb, the deceased husband of the plaintiff. The defendant issued the group policy in question to the University of Connecticut where, at the time of his death, Newcomb was a tenured professor, and under the terms of the policy it agreed to provide life insurance to eligible employees of the university. The defendant interposed a special defense to the action based upon a

clause in the policy which provided that it covered only those employees who were in "active service" on certain specified enrolment dates, in this case July 1, 1971, and that Newcomb was not in fact in such "active service" on that date. The trial court concluded that the defendant was estopped from asserting the "active service" requirement and also that Newcomb was, in fact, in "active service" on July 1, 1971, and rendered judgment for the plaintiff. The defendant has appealed from the judgment rendered, assigning as error the decisions of the court in refusing to find the facts set forth in ten paragraphs of the draft finding, in finding without evidence the facts set forth in two paragraphs of the finding, in reaching the two conclusions mentioned above, and in rendering judgment for the plaintiff when the facts set forth in the finding do not support it.

The issues presented by this appeal are generated by the defendant's challenges to the conclusions of the court (1) that the defendant was estopped from asserting the "active service" requirement of the policy and (2) that Newcomb was, in fact, in "active service" on July 1, 1971. We find the second of these issues to be dispositive of this appeal.

The trial court's conclusions are tested by the finding; *State* v. *Villafane,* 164 Conn. 637, 638, 325 A.2d 251; *Brauer* v. *Freccia,* 159 Conn. 289, 293, 268 A.2d 645; and they must stand unless they are legally or logically inconsistent with the facts found or unless they involve the application of some erroneous rule of law material to the case. *Connecticut Bank & Trust Co.* v. *Bovey,* 162 Conn. 201, 205–206, 292 A.2d 899; *Johnston Jewels, Ltd.* v. *Leonard,* 156 Conn. 75, 79, 239 A.2d 500.

The finding, which is not subject to material correction,[1] reveals the following facts which are relevant to the issue of whether Newcomb was in "active service" on the significant date: On May 11, 1970, the defendant issued to the University of Connecticut a group insurance policy, under the terms of which the defendant agreed to provide life insurance to eligible employees who applied therefor and who met the terms and conditions of the policy. One of the conditions of the policy was that an employee's insurance would become effective on the January 1, April 1, July 1 or October 1 next following the date of his application, provided that he was then in "active service" as that term was defined in the policy;[2] otherwise, upon his return to "active ser-

[1] As noted, the defendant assigned error in the failure of the court to find the facts set forth in ten paragraphs of its draft finding and in finding without evidence two paragraphs of the finding. Several of these claims have not been briefed and are thus treated as abandoned. *Morrow* v. *Morrow,* 165 Conn. 665, 667 n.1, 345 A.2d 561; *State* v. *Grayton,* 163 Conn. 104, 109, 302 A.2d 246, cert. denied, 409 U.S. 1045, 93 S. Ct. 542, 34 L. Ed. 2d 495; Maltbie, Conn. App. Proc. § 327.

The defendant has briefed its claims that the court erred in failing to find the facts set forth in three paragraphs of the draft finding but an examination of these claims reveals that the undisputed facts set forth in the paragraphs in question were, in fact, implicit in the finding. A finding need not be in language identical with the draft finding. *Walsh* v. *Turlick,* 164 Conn. 75, 77, 316 A.2d 759; *Aczas* v. *Stuart Heights, Inc.,* 154 Conn. 54, 55, 221 A.2d 589. The remaining facts were neither admitted nor undisputed. A fact is not admitted or undisputed merely because it has not been contradicted. Practice Book § 628 (a); *Malarney* v. *Peterson,* 159 Conn. 342, 344, 269 A.2d 274.

The defendant briefed only one challenge to the finding as made and as there is evidence in the plaintiff's appendix which supports this finding, it is retained.

[2] The term "active service" was defined in the policy as follows: "An Employee will be considered in Active Service with an Employer on a day which is one of the Employer's scheduled work days if he is performing in the customary manner all of the regular duties of his employment with the Employer on a full-time basis on that day

vice." The insurance contract was not uniquely designed for the University of Connecticut, being a form contract used by the defendant for all of its group insurance sales.

Bradley L. Newcomb, a tenured professor of mechanical engineering at the university, suffered a heart attack on March 6, 1971. Because of his illness, Newcomb was granted sick leave by the university from April 21 to June 9, 1971, the end of the academic year. His sick leave terminated on that date because it was unnecessary to grant sick leave in the summer when no specific duties were assigned to members of the faculty. On April 19, 1971, Newcomb applied for $50,000 of life insurance, naming his wife, the plaintiff, as beneficiary. His application for insurance was remitted by the university to the defendant and the defendant sent Newcomb a quarterly bill of $233 which was paid by check dated June 29, 1971. The defendant accepted and endorsed Newcomb's check as payment for the first quarterly premium and billed him for the second quarterly premium. The defendant never sought to return the premium which it had accepted until after this suit had been brought.

Newcomb's contract with the university was for twelve months each year, with twenty-six pay periods. He was assigned no specific duties by the university from June 9, 1971, to September 10, 1971. The letter of appointment for the faculty of the

either at one of the Employer's business establishments or at some location to which the Employer's business requires him to travel. An Employee will be considered in Active Service on a day which is not one of the Employer's scheduled work days only if he was performing in the customary manner all of the regular duties of his employment on the next preceding scheduled work day."

University of Connecticut for the academic year 1970–71 specified that assigned duties would be limited to the nine-month period beginning September 10, 1970, and ending June 9, 1971. The defendant had set up no policies, procedures or rules of guidance to determine which of the applicants during the open enrolment of April, 1971, were, in fact, on active service on July 1, 1971. July 1 and July 2, 1971, were regularly scheduled work days of the University of Connecticut.

The duties of tenured professors are of more than one character and are contemplated to be performed at different times, at different places and under varying circumstances. A tenured professor's duties fall into two categories, assigned duties and self-directed duties. Assigned duties of tenured professors are performed between September and June, while self-directed duties may be engaged in at some unoccupied period of the nine-month period of the year and any time during the three summer months. Study, scholarship and research activities are included in self-directed duties. The university had no requirement that self-directed duties be performed at any particular time or any particular place, with the result that they might be performed at night, at home and on weekends. July 1 and 2, 1971, were days upon which the university expected its tenured professors to be engaged in self-directed activities and, in fact, Newcomb devoted the major portion of those days to reading, writing and graph drawing in his home study and den and was mentally alert and physically able to perform such work.

On July 3, Newcomb developed acute pulmonary edema and was admitted to the hospital, where he died on August 2, 1971. A proof of death claim form

was submitted to the defendant's claim office by the personnel office of the university. The plaintiff's claim was rejected on November 12, 1971.

It is the defendant's contention that the trial court erred in concluding, from the foregoing facts, that Newcomb was in "active service" within the meaning of the policy on July 1, 1971. It argues, grounding its claims on the wording of the policy provision, that July 1, 1971, was not a "regularly scheduled work day" of the employer and that Newcomb was not in "active service" on the next preceding scheduled work day, the last day of the prior semester; that Newcomb's activities on July 1 did not constitute the performance "in the customary manner of all the regular duties of his employment" because no specific duties were required of him on that day nor was he required to be at any particular place; and lastly that Newcomb was neither at one of the university's business establishments nor "at some location to which the Employer's business . . . [required] him to travel." On the basis of these claims, the defendant asserts that Newcomb did not meet the "active service" condition of the policy and was thus excluded from coverage. We cannot agree.

As the trial court found, the contract in question was not a unique contract specifically designed for university use, but rather a standard form contract used by the defendant for all of its group insurance sales. It was obviously designed for ordinary, routine jobs and not tailored for employment presenting unusual features, such as that of a university professor. For the modern university professor, research and continued study and writing are required to enable him to be familiar with the new findings and trends in his field and can be as impor-

tant as teaching, which has as its own concomitant preparation for class. See Barzun, The American University, pp. 20–33; Highet, The Art of Teaching, pp. 90–94. For many university professors, research has the highest priority, sometimes to the complete exclusion of teaching. See Barzun, supra. The strict interpretation of the "active service" requirement suggested by the defendant ignores these factors, as well as the basic reality that these important university functions can be and frequently are performed during the summer months and in the home. Its interpretation of the requirement could, for example, exclude all professors with no assigned teaching duties on the last day of the prior semester from "active service" for the entire summer. A research employee of the university who might not ever be "required" to be at any particular place presumably never could be in "active service," according to the defendant's interpretation. As applied to any employment consisting, to a substantial degree, of independent intellectual endeavor, such as that of a university professor, the "active service" requirement is inherently ambiguous.

When the terms of an insurance contract are open to two or more reasonable constructions, that construction most favorable to the assured should be adopted. *Marcolini* v. *Allstate Ins. Co.*, 160 Conn. 280, 282, 278 A.2d 796; *LaBonte* v. *Federal Mutual Ins. Co.*, 159 Conn. 252, 256, 268 A.2d 663; *A. M. Larson Co.* v. *Lawlor Ins. Agency, Inc.*, 153 Conn. 618, 622, 220 A.2d 32; *Scranton* v. *Hartford Fire Ins. Co.*, 141 Conn. 313, 315–16, 105 A.2d 780; 43 Am. Jur. 2d, Insurance, § 271. The rule rests upon the ground that the company's attorneys, officers or agents prepared the policy, and it is its language

that must be interpreted. *King* v. *Travelers Ins. Co.*, 123 Conn. 1, 4, 192 A. 311; *Rinaldi* v. *Prudential Ins. Co.*, 118 Conn. 419, 423–24, 172 A. 777. In the circumstances of the case before us, this long-standing rule of construction leads us to construe "active service" in light of the relationship between the employer and the employee, namely, that of a university and a tenured professor, and in light of the particular nature of professorial employment. Determining whether such a requirement has been met by this means is hardly novel, though it generally has been done in cases involving managerial or supervisory employees.

In *Equitable Life Assurance Society* v. *Worthman*, 67 F.2d 721 (7th Cir.), the court described the test for such employees as follows (p. 323): "In the case of such an employee, what might reasonably be considered as full-time service depends largely upon the relations and transactions between employer and employee. It is not essential to full-time employment that such an employee be regularly and continuously at a particular place, such as the employer's office. He might at his own home render such advisory and supervisory service as is deemed by the employer to be, and in fact was, a full-time service for the time being." This test was reiterated in *Great-West Life Assurance Co.* v. *Levy*, 382 F.2d 357, 360 (10th Cir.). In *Augusta* v. *John Hancock Mutual Life Ins. Co.*, 11 Misc. 2d 111, 170 N.Y.S.2d 908, a supervisory employee, in the hospital and in critical condition, was held to be actively at work because he gave counsel, advice and orders to other employees, although he died without ever leaving the hospital. Cf. *Colantonio* v. *Equitable Life Assurance Society*, 64 Ohio L. Abs. 490, 100 N.E.2d 716. In our view, the nature of a university professor's

job is, if anything, more susceptible to the type of reasoning found in the cases cited above than that of a managerial or supervisory employee. Moreover, the finding, by which, as we have noted, the court's conclusion must be tested, amply demonstrates that Newcomb was engaging in all of the normal activities of a tenured professor on July 1, 1971, and was at that time fully meeting the expectations of the university with respect to his work.

The court found that July 1 and July 2 were "regularly scheduled work days" of the university, a finding which, although challenged, was fully supported by the evidence printed in the appendix to the plaintiff's brief.[3] There are also numerous findings supporting the conclusion that Newcomb was performing the "regular duties" of a tenured professor in his "customary manner." The court found that the duties of tenured professors are of more than one character and are contemplated to be performed at different times, at different places and under varying circumstances. Among these duties are self-directed duties, including study, scholarship and research activities, which might be performed at home, at night, or on weekends. Such duties could be performed at any time during the three summer months. July 1 and 2, 1971, were days upon which the university expected its tenured professors to be engaged in self-directed activities and in fact Newcomb devoted the major portion of those days to such activities. He was, therefore, performing all of the customary duties of a tenured professor at the time in question. Moreover, these findings of fact, interpreted in the context of the general nature of the duties of a university professor and of

[3] See footnote 1, supra.

a university itself, lead irresistibly to the conclusion that, insofar as a professor's self-directed duties are concerned, a study or den in his home is an "establishment" wherein he may go about his employer's "business." Another fact of importance is that Newcomb's contract with the university was a twelve-month contract and not merely one for the September-June academic period. We cannot say that the conclusion of the court that Newcomb was in "active service" on July 1, 1971, was legally or logically inconsistent with the foregoing findings of fact; accordingly, his life was insured under the group policy.

There is no error.

In this opinion the other judges concurred.