[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
SUPPLEMENTAL MEMORANDUM OF DECISION
This memorandum is in response to defendant's motion to reargue, and plaintiff's opposition to that motion. The basis of the motion to reargue is that the court has misread the policy in issue.
Part C-Uninsured Motorists Coverage of the Bourgoin insurance policy provides that the insurer will pay damages under two conditions: (1) to a "covered person," (2) where an accident was caused by an "uninsured motor vehicle" being operated by an owner or operator who was legally at fault.
"Covered person" in Part C can be "2. Any other person occupying your covered auto."
"Uninsured motor vehicle," according to Part C defines four situations under which no coverage exists. The applicable situation to this case is where there is no bodily injury liability bond or policy. Such is not the case in the present action since the Bourgoin vehicle did have a $300,000 bodily injury liability policy.
We then consider Part C further. Part C provides that no vehicle can be considered as an "uninsured motor vehicle" if it is ". . . furnished or available for the regular use of you or any family member." You, being the named insured. In effect, this provision excludes from the definition of uninsured motorist coverage, the name insured and any family member. A simple addition to the language of the policy could also have excluded any other person occupying the uninsured CT Page 4083 vehicle.
The exclusionary portion of Part C attempts to address this issue under "EXCLUSIONS A. We do not provide Uninsured Motorists Coverage for bodily injury sustained by any person: 1. While occupying, . . . a motor vehicle owned by you or any family member which is not insured for this coverage under this policy." This provision of the policy does not provide an answer, but merely raises the question that we are attempting to decide here. Is the Bourgoin vehicle covered for uninsured motorist coverage as to Nokes?
As stated in Allstate Insurance Co. v. Ferrante,201 Conn. 478, 486 (1986) "The crucial question is whether an injured person has coverage under the terms of the policy . . . ."
Where there is a difference in the construction of the language of an insurance policy, we must be guided by the rule of law set by our Supreme Court in Griswold v. Union Labor Life Ins. Co., 186 Conn. 507, 513 (1982), which stated:
 "`[w]hen the words of an insurance contract are, without violence, susceptible of two interpretations, that which will sustain the claim and cover the loss must, in preference, be adopted.' Raffel v. Travelers Indemnity Co., 141 Conn. 389, 392, 106 A.2d 716 [1954]; see also 4 Williston, Contracts (3d Ed.) 621.
 `This rule — that the construction most favorable to the insured be adopted -' "rests upon the ground that the company's attorneys, officers or agents prepared the policy, and it is its language that must be interpreted." Roby v. Connecticut General Life Ins. Co., 166 Conn. 395, 402, 349 A.2d 838 [1974]. The rule itself derives from the established principle of contract construction that, where the terms of a contract are equally susceptible to two different meanings, that favoring the party who did not draw up the contract will be applied. "The premise operating behind the rule would seem to be a psychological one. The party who actually does the writing of an instrument will presumably be guided by his own interests and goals in the transaction. He may choose shadings of expression, words more specific or more imprecise, according to the dictates of these interests." `Ravitch v. Stollman Poultry Farms, Inc., 165 Conn. 135, 146 n. 8, 328 A.2d 711
[1973]. A further, related rationale for the rule is that' "[s]ince one who speaks or writes, can by CT Page 4084 exactness of expression more easily prevent mistakes in meaning, than one with whom he is dealing, doubts arising from ambiguity are resolved in favor of the latter." `4 Williston, op. cit. 621, p. 760.' Simses v. North American Co. for Life Health Ins., 175 Conn. 77, 84-85, 394 A.2d 710 (1978). Courts follow that rule because the insurance company's attorneys officers or agents prepare the policy and it is their language that must be interpreted. (citations omitted)."
As we stated in our original Memorandum of Decision, we are constrained to interpret the Bourgoin policy in favor of the plaintiff Nokes.
ARNOLD W. ARONSON, J.