## EQUITABLE LIFE ASSUR. SOC. OF UNITED STATES v. WORTHMAN.

### No. 4925.

Circuit Court of Appeals, Seventh Circuit. Dec. 7, 1933.

W. P. Crawford and Francis M. Crawford, both of Superior, Wis., for appellant.

Clarence J. Hartley, of Superior, Wis., for appellee.

Before ALSCHULER, EVANS, and FITZHENRY, Circuit Judges.

ALSCHULER, Circuit Judge.

Appellee, surviving widow of Harry L. Worthman, brought this suit as his beneficiary under a policy of group life insurance issued by appellant to the employer of deceased for the benefit of its employees. The question is whether the insurance ever became effective as to Worthman.

The plan was to issue a single policy to the employer upon the lives of all its employees who would signify their acceptance of the insurance and agree that the employer might deduct from their earnings periodical premium payments for a certain proportion of the premium, the employer assuming to pay the balance.

Under the policy, effective June 1, 1929, Worthman had been carrying $2,000 of life insurance, with provision for disability compensation and for conversion of the policy into some other form of insurance with appellant in case his employment ceased. Only one policy was issued, which remained with the employer at its New York office.

Effective as of July 1, 1930, there was attached to the policy a rider dated June 10, 1930, under which all salaried and supervisory employees of the employer became eligible for extended insurance in amounts dependent upon the employee's salary and length of service. One of the conditions of this rider was that employees who on its effective date were not working full time and for full pay should not be eligible for the extended insurance until their return to work at full time and for full pay.

Worthman, an old employee, with a salary of $6,000, could thus, if otherwise eligible, have $6,000 of additional insurance. Under date of May 26, 1930, Worthman executed appellant's form manifesting his election to take the extended insurance, and authorizing the employer to deduct from his salary the stipulated monthly contributions toward his premium payments, and naming his wife (appellee) as beneficiary. Under date of June 17, 1930, there appears, upon what purports to be a blank of appellant, a statement of the names of the employees who had accepted this extended insurance (which includes that of Worthman) and other information, certified by the employer and delivered to appellant:

Worthman kept up his payments under the original coverage, and on his death the amount of it ($2,000) was paid appellee. He also made the original and all maturing premium payments which became payable on the extended insurance from the time he accepted it until he died.

The defense is that, as to Worthman, this extended insurance never took effect, in that he became ill before the effective date (July 1, 1930) of the rider for the extended insurance, and that he was not employed full time from the time this illness began until his death on September 16, 1930. The jury found for appellee for the amount of the extended insurance and interest, and judgment went accordingly.

The precise issue upon which the case was tried is indicated by the special interrogatory which, at appellant's request, the court submitted to the jury: "Was Harry L. Worthman working full time and for full pay for his employer, the Northwestern Fuel Company. on July 1st, 1930, or at any time between July 1st, 1930, and the date of his death, September 16, 1930?"

Appellant's brief also states the one contested issue to be: "Was the assured, Harry L. Worthman, 'working full time and for full pay' for his employer on July 1, 1930, or at any time between July 1, 1930, and the date of his death, September 16, 1930?"

As to the pay, there was no issue, Worthman having been regularly paid his full salary up to his death. The jury answered the submitted interrogatory affirmatively, but appellant contends there is no evidence fairly tending to support the answer.

Had deceased been a daily wage worker, with regular duties to perform at particular times and places, the question might be more easy of solution. He was long the assistant superintendent of the Northwestern Fuel Company, a subsidiary of the Consolidation Coal Company of New York, with which the policy had been negotiated and to which it was delivered. He had charge of the employer's very extensive three coal docks at Superior, Wis., and Duluth, Minn., employing normally from 200 to 250 men. His duties were supervisory, not involving physical labor, and his usual headquarters were at an office near one of the docks.

On April 12, 1930, Worthman went to the Mayo Clinic at Rochester, Minn., where it was concluded that his tonsils should be removed. He returned to his home at Superior, where this operation took place on April 24. He went to his office about April 30, and was there most of the time until May 22, when

he again went to the Mayo Clinic for a hernia operation, returning to his home about June 23. He did not go to the office, but it was testified that at the urgence of his superior he remained at his home, where he was up and about and was visited by various of the employees, with some of whom he took up the matter of the employer's business. It was testified that his duties were such that no continuing regular time was necessary therefor, but that he was subject to call at any time, and that whatever was required of him he did during this interval of time. It was testified that the absence from his office was at a time of the year when the work at the coal docks was light, and supervisory employees quite occasionally took vacations, some going fishing. He was thus at his home until July 12, when he went with his wife to Solon Springs, a nearby resort, where he owned a summer cottage, remaining there about three weeks, and about August 12 went to a sanatorium where, about four weeks thereafter, he died of gastric carcinoma.

There appeared in evidence receipted drafts signed by Worthman for disability payments under the policy covering a period of thirteen weeks ending July 17, 1930, wherein it was recited that he was under disability during that time. As to that his superior testified that part of that time he was away from his work, but that he was drawing his salary and was subject to call or consultation as needed. The superintendent testified that during part of that time Worthman was on leave of absence, and was on duty part of that time. While he said that Worthman was not working full time during that period, he did not say that at *none of the time* during that period was he a full-time employee; indeed, the fair inference from all his evidence is that at times Worthman's service was the equivalent, for the time being, of full-time work.

It must be considered that, under the terms of the extended insurance, if on the date it became effective, July 1, Worthman was not working full time, it would become effective at any time thereafter when he did render what would amount to full-time service, even if only for a brief period, and that, once effective, it would so remain while the premiums were paid and the employment continued.

The superintendent also testified that during the period the employer constructed and put into operation a new 250,000-ton capacity coal dock at Milwaukee, and that Worthman, on account of his long experience with coal docks, was called on in advisory capacity respecting this new dock.

In the case of such an employee, what might reasonably be considered as full-time service depends largely upon the relations and transactions between employer and employee. It is not essential to full-time employment that such an employee be regularly and continuously at a particular place, such as the employer's office. He might at his own home render such advisory and supervisory service as is deemed by the employer to be, and in fact was, a full-time service for the time being. This could have been by conference and consultation with other officers of the employer, and to the employer's entire satisfaction. In this connection, and as bearing on the quantum of the service rendered, the jury may have considered the fact that, during all the time in question, the employer saw fit regularly to pay Worthman his full salary.

Whatever of ambiguity or indefiniteness there may be in the words "working full time" as applied to such a case can avail appellant nothing, since it chose to employ these words in the preparation of the insurance contract.

Some comments by Judge Briggle in passing on the motion for a directed verdict are quite in point.[1]

[1] "What does full time mean, and what does that mean with reference to this particular employee? If the employee was a workman on the dock, and the company was working regularly eight hours a day, I suppose it would be held that he would have to work substantially eight hours a day and work every day that they worked. We are dealing here with an assistant superintendent. It is a question what his duties were, and the question of that man at full time it seems to me is an entirely different question than it would be with an ordinary employee. His duties to a large extent are supervisory. It is true that a good deal of the time that he might have become eligible for this insurance he was not at the office. A good part of the time he was in the hospital. There is some evidence to show that he was consulted at different times, and his immediate superior says he responded every time he was called on. * * * Mrs. Worthman testified that June 25 to July 12 he was up and dressed each day, and different men from the Fuel Company came to see him and talk business with him. McTaggart came to see him about the dock business during that time. * * * There are some circumstances here that might indicate to the jury that he was working full time at least a very short period of the time involved. There are some statements rather detrimental to the plaintiff that went in in these proofs that were made on this disability question in regard to these drafts, but whether that of itself would justify the court in disregarding any other circumstances that might tend to show he was working, I doubt. That is a question for the jury. What full time means under this policy is a question, but bearing in mind that this is the defendant's language in the contract, and that it is to be construed most strongly against the defendant, I am inclined to submit that question to the jury, and I do not see any other questions of fact in the case to argue to the jury."

We believe that, under a reasonable interpretation of the words "working full time," as applied to such an employee, and under the facts indicated, it cannot properly be said that the jury was not warranted in finding that at some time between July 1 and the time of Worthman's death, September 16, he did work full time, whereby the extended insurance became effective as to him.

We conclude that the judgment of the District Court must be, and it is, affirmed.