**GREAT–WEST LIFE ASSURANCE COMPANY, Appellant,**

v.

**Gertrude LEVY, Appellee.**

**No. 9244.**

United States Court of Appeals Tenth Circuit.

Sept. 5, 1967.

John S. Castellano, Denver, Colo. (Holland & Hart, Denver, Colo., on the brief), for appellant.

James A. Clark, Denver, Colo., for appellee.

Before WILBUR K. MILLER, Senior Circuit Judge,* BREITENSTEIN and HILL, Circuit Judge.

HILL, Circuit Judge.

This action was brought in the trial court by appellee, as beneficiary, to recover upon a group life insurance policy covering her deceased husband. A jury trial was had and after a general verdict in her favor a judgment was entered, from which this appeal followed.

Mr. Theodore Levy established an advertising agency in Denver, Colorado, about 1927, and operated the same in partnership with appellee until 1956. Prior to this date he had been injured and as a result suffered some physical impairment. Because of this he negotiated a sale of the business to a Mr. Epstein and a Mr. Lane. Levy was to re-

* Of the United States Court of Appeals for the District of Columbia, sitting by designation.

ceive $500.00 per month until 1960 and it was further agreed that Levy would not disclose that he was no longer in charge of the business and would keep in touch with his clients because "he knew [them], what they wanted and what they liked, and how to take care of them." In August, 1959, Mr. Epstein became desirous of establishing a group policy life insurance plan for the company employees. The Colorado statutes required a minimum of ten participants in any group life insurance plan and there were only nine people working directly for the advertising agency. Mr. Epstein and an insurance broker, Mr. Baum, contacted Levy about participating in the group policy and he agreed to the proposal. The group policy was issued by appellant company on August 20, 1959, and Levy died in 1961, with the policy still in force. Appellant refused to pay appellee upon the policy and tendered the return of the premiums paid. The refusal was based on appellant's contention that Levy did not qualify under the plan as an employee of the advertising agency.

This suit was then brought by the beneficiary on two theories: (1) That Levy was an employee under the policy and qualified for membership in the group life insurance policy; and (2) in the alternative that the insurance company had knowledge of Levy's relationship with the advertising agency and, therefore, waived any right to deny coverage as to Levy on the ground of lack of employee status. The trial judge submitted the case to the jury under both theories and because of the form of the verdict we are unable to determine which of the theories was adopted by the jury as the basis for recovery. However, if, under the evidence and the law of the case, we are able to sustain the verdict under either theory the verdict and judgment will not be disturbed.

Appellant insurer presents three basic contentions on appeal: (1) That the court erred in charging the jury that the burden of proof was upon defendant to prove that Theodore Levy was not an employee of the group policyholder; (2)

that the evidence did not support a jury finding that Theodore Levy was an employee of the policyholder; and, (3) that the evidence did not support a jury finding that the defendant waived any requirements of the policy as to Theodore Levy.

Appellant did not satisfy Rule 51 of the Federal Rules of Civil Procedure in making objections to the court's instructions below and is, therefore, barred from presenting the first question on appeal. The record clearly shows that no objections were made to the instructions after they were given to the jury and before the jury retired as required by Rule 51. Appellant contends that the burden of proof issue was raised by the defendant in the course of a conference in chambers relating to the instructions tendered by the parties and that this fulfills the requirement of Rule 51. However, this court in Dunn v. St. Louis-San Francisco Railway Co., 10 Cir., 370 F.2d 681, clearly reiterated such objection does not reserve the issue for consideration on appeal. As a matter of discussion, we will go on to note that even on the merits appellant's contention as to burden of proof is not valid. Jurisdiction in the federal court in this case is by diversity and the federal court will apply the state law as to burden of proof. Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188; Cities Service Oil Co. v. Dunlap, 308 U.S. 208, 60 S.Ct. 201, 84 L.Ed. 196. Colorado has not expressly ruled on the issue as to who has the burden of proof as to inclusion in a group type policy; however, as to a regular type policy it is clear that the insuror has the affirmative burden to void a policy. Olinger Mutual Benefit Ass'n v. Christy, 139 Colo. 425, 342 P.2d 1000. The law in other jurisdictions is in conflict as to who should have the burden of proof on the issue of coverage by a group policy. Compare Carp v. California-Western States Life Insurance Co., 5 Cir., 252 F.2d 337, with State Mutual Life Assurance Co. v. Wittenberg, 8 Cir., 239 F.2d 87. Where the applicable state law is not clear the trial court's view of the state

law is accepted unless clearly erroneous. Industrial Indemnity Co. v. Continental Casualty Co., 10 Cir., 375 F.2d 183. Here the trial court's holding that defendant had the burden of proof to show that Theodore Levy was not an employee of the advertising agency was not clearly erroneous.

The appellant's next contention is that the evidence does not support a jury finding that Theodore Levy was an employee of the advertising agency. As discussed above, the defendant had the burden of proof to prove by a preponderance of the evidence that the deceased was not an employee of the advertising agency. Before the appellate court can reverse a jury finding that the deceased was an employee within the meaning of the insurance policy the evidence must be such that no reasonable man could find from the evidence that Mr. Levy was an employee as that term was defined by the policy. If there is a conflict presented by the evidence then the jury verdict will not be disturbed unless there is no substantial evidence to support the jury's finding. The relevant terms for determining status for coverage are set out in the insurance policy. Employee is defined as "an employee in the service of the employer." Service is defined as "active and full-time employment with the employer * * *." The jury was further instructed that the term active and full-time employment "must be judged with reference to the duties or the services of the particular employee in question and relations and transactions between the employer and the employee," and that "It is not essential to full-time employment that such an employee be regularly and continuously at a particular place, such as the employer's office." The jury was further instructed that the insurance contracts were drafted by the insurance companies and are to be strictly construed against the company. These instructions are in accordance with existing law. Colorado courts have clearly stated that ambiguities in the language of an insurance contract are to be construed against the insurance company. Wilson v. Automobile Owners Ass'n. Ins. Co., 148 Colo. 550, 366 P.2d 654; Columbian Nat. Life Ins. Co. v. McClain, 115 Colo. 458, 174 P.2d 348. The additional instruction with regard to what the jury could consider in making the determination of the deceased's status appears to be consistent with a reasonable interpretation of the definition of "service" set out in the policy.[1] Any ambiguity, of course, in the term "full-time employment" is to be resolved against the insurer.

Plaintiff's contention was that her husband, Mr. Levy, continued to serve the advertising agency in a consultant capacity and that, as such, he rendered full-time service in advising former clients and following their needs and in consulting with the employers at the advertising agency. We believe a reasonable interpretation of the term "full-time employment" as used in the insurance policy could include a consultant such as, it was argued, was Mr. Levy's position. Accepting the proposition that such status could come within the term "full-time employment" it is now necessary to to determine whether any evidence was introduced at the trial to support such a finding by the jury. An examination of the record shows that there is ample evidence to support such a finding.

---

1. An analogous situation arose in Equitable Life Assur. Soc. of United States v. Worthman, 7 Cir., 67 F.2d 721. There the court states, at 723:

"In the case of such an employee what might reasonably be considered as full-time service depends largely upon the relations and transactions between employer and employee. It is not essential to full-time employment that such an employee be regularly and continuously at a particular place, such as the employer's office. He might at his own home render such advisory and supervisory service as is deemed by the employer to be, and in fact was, a full-time service for the time being. This could have been by conference and consultation with other officers of the employer, and to the employer's entire satisfaction."

Mrs. Levy testified that "they [the advertising agency] felt that they wanted him to advise our clients that he was still with the agency, which we were selling out, but that we—so not to feel that we were just relinquishing our clients to someone that they didn't know about. It is a professional business. He was the mainstay of that business. Well, my husband in that turn agreed to keep in close touch with our clients and to advise them and to suggest things and he religiously watched the advertisements in the paper and would call them several times throughout the week and keep in touch with them." Further that Mr. Levy "kept in touch with all our customers and mostly on the phone, but there were times like with Mr. Miller, he said he couldn't come up to the house, but would he come down there, and I proceeded to drive my husband there because he was unable to get about, \* \* \*." That Mr. Levy "kept in touch with him [the new owners] constantly about our clients and advised them on different things, and he talked with them almost every day from home, \* \* \*." A Mr. Miller, owner of Miller Furniture Company, testified that Mr. Levy had remained in contact with him and that he still thought that Mr. Levy was associated with the advertising agency. Phillips Karsh, also an employee of the advertising agency, testified that Levy directed several accounts to the store after the sale of the advertising agency. Mr. Epstein, the present owner of the advertising agency, testified to meeting and consulting with Mr. Levy on a number of occasions. It was further shown that Mr. Levy was elected an officer of Advertising Advisers, Inc., six months before he died, to serve during the period from September, 1960, to September, 1961. This evidence is sufficient to support the plaintiff's contention as to the status of the deceased, Mr. Levy, as an employee within the terms of the group policy insurance contract.

Having no difficulty in being able to sustain the verdict on the first theory urged by appellee-plaintiff it is not necessary to discuss the second theory of recovery urged.

Affirmed.